**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 2:18-CV-1456** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Chelsey M. Vascura** |
| **GS CALTEX CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

## FINAL JUDGMENT AS TO DEFENDANT GS CALTEX CORPORATION

WHEREAS Plaintiff, United States of America, filed its Complaint on November 14, 2018, the United States and Defendant GS Caltex Corporation ("GS Caltex"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law;

WHEREAS, on such date as may be determined by the Court, GS Caltex will plead guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) (the "Plea Agreement") to an Information to be filed in *United States v. GS Caltex Corporation* [to be assigned] (S.D. Ohio) (the "Criminal Action") that will allege a violation of Section 1 of the Sherman Act, 15 U.S. C. § 1, relating to the same events giving rise to the allegations described in the Complaint;

WHEREAS, this Final Judgment does not constitute any evidence against or admission by any party regarding any issue of fact or law;

NOW, THEREFORE, before the taking of any testimony and without trial or final adjudication of any issue of fact or law herein, and upon consent of the parties hereto, it is hereby ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

This Court has jurisdiction of the subject matter of this action and each of the parties

consenting hereto. The Complaint states a claim upon which relief may be granted to the United

States against GS Caltex under Section 1 of the Sherman Act, 15 U.S.C. §1.

## II.    APPLICABILITY

This Final Judgment applies to GS Caltex, as defined above, and all other persons in

active concert or participation with any of them who receive actual notice of this Final Judgment

by personal service or otherwise.

## III.    PAYMENT

GS Caltex shall pay to the United States within ten (10) business days of the entry of this

Final Judgment the amount of fifty-seven million, five hundred thousand dollars ($57,500,000),

less the amount paid (excluding any interest) pursuant to the settlement agreement attached

hereto as Attachment 1, to satisfy all civil antitrust claims alleged against GS Caltex by the

United States in the Complaint.  Payment of the amount ordered hereby shall be made by wire

transfer of funds or cashier's check.  If the payment is made by wire transfer, GS Caltex shall

contact Janie Ingalls of the Antitrust Division's Antitrust Documents Group at (202) 514-2481

for instructions before making the transfer.  If the payment is made by cashier's check, the check

shall be made payable to the United States Department of Justice and delivered to: Janie Ingalls,

United States Department of Justice Antitrust Division, Antitrust Documents Group, 450 5th

Street, NW, Suite 1024, Washington, D.C. 20530. In the event of a default in payment, interest at

the rate of eighteen (18) percent per annum shall accrue thereon from the date of default to the

date of payment.

# IV.    COOPERATION

GS Caltex shall cooperate fully with the United States regarding any matter about which GS Caltex has knowledge or information relating to any ongoing civil investigation, litigation, or other proceeding arising out of any ongoing federal investigation of the subject matter discussed in the Complaint (hereinafter, any such investigation, litigation, or proceeding shall be referred to as a "Civil Federal Proceeding").

The United States agrees that any cooperation provided in connection with the Plea Agreement and/or pursuant to the settlement agreement attached hereto as Attachment 1 will be considered cooperation for purposes of this Final Judgment, and the United States will use its reasonable best efforts, where appropriate, to coordinate any requests for cooperation in connection with the Civil Federal Proceeding with requests for cooperation in connection with the Plea Agreement and the settlement agreement attached hereto as Attachment 1, so as to avoid unnecessary duplication and expense.

GS Caltex's cooperation shall include, but not be limited to, the following:

(a) Upon request, completely and truthfully disclosing and producing, to the offices of the United States and at no expense to the United States, copies of all non-privileged information, documents, materials, and records in its possession (and for any foreign-language information, documents, materials, or records, copies must be produced with an English translation), regardless of their geographic location, about which the United States may inquire in connection with any Civil Federal Proceeding, including but not limited to all information about activities of GS Caltex and present and former officers, directors, employees, and agents of GS Caltex;

(b) Making available in the United States, at no expense to the United States, its present officers, directors, employees, and agents to provide information and/or testimony as

requested by the United States in connection with any Civil Federal Proceeding, including the provision of testimony in trial and other judicial proceedings, as well as interviews with law enforcement authorities, consistent with the rights and privileges of those individuals;

(c) Using its best efforts to make available in the United States, at no expense to the United States, its former officers, directors, employees, and agents to provide information and/or testimony as requested by the United States in connection with any Civil Federal Proceeding, including the provision of testimony in trial and other judicial proceedings, as well as interviews with law enforcement authorities, consistent with the rights and privileges of those individuals;

(d) Providing testimony or information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence produced by GS Caltex in any Civil Federal Proceeding as requested by the United States; and

(e) Completely and truthfully responding to all other inquiries of the United States in connection with any Civil Federal Proceeding.

However, notwithstanding any provision of this Final Judgment, GS Caltex is not required to: (1) request of its current or former officers, directors, employees, or agents that they forgo seeking the advice of an attorney nor that they act contrary to that advice; (2) take any action against its officers, directors, employees, or agents for following their attorney's advice; or (3) waive any claim of privilege or work product protection.

The obligations of GS Caltex to cooperate fully with the United States as described in this Section shall cease upon the conclusion of all Civil Federal Proceedings (which may include

Civil Federal Proceedings related to the conduct of third parties), including exhaustion of all appeals or expiration of time for all appeals of any Court ruling in each such Civil Federal Proceeding, at which point the United States will provide written notice to GS Caltex that its obligations under this Section have expired.

## V.  ANTITRUST COMPLIANCE PROGRAM

A.  Within thirty (30) days after entry of this Final Judgment, GS Caltex shall appoint an Antitrust Compliance Officer and identify to the United States his or her name, business address, telephone number, and email address. Within forty-five (45) days of a vacancy in the Antitrust Compliance Officer position, GS Caltex shall appoint a replacement, and shall identify to the United States the Antitrust Compliance Officer's name, business address, telephone number, and email address. GS Caltex's initial or replacement appointment of an Antitrust Compliance Officer is subject to the approval of the United States, in its sole discretion.

B.  The Antitrust Compliance Officer shall institute an antitrust compliance program for the company's employees and directors with responsibility for bidding for any contract with the United States. The antitrust compliance program shall provide at least two hours of training annually on the antitrust laws of the United States, such training to be delivered by an attorney with relevant experience in the field of United States antitrust law.

C.  Each Antitrust Compliance Officer shall obtain, within six months after entry of this Final Judgment, and on an annual basis thereafter, on or before each anniversary of the entry of this Final Judgment, from each person subject to Paragraph V.B of this Final Judgment, and thereafter maintaining, a certification that each such person has received the required two hours of annual antitrust training.

D.     Each Antitrust Compliance Officer shall communicate annually to all employees that they may disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of the United States antitrust laws.

E.     Each Antitrust Compliance Offer shall provide to the United States within six months after entry of this Final Judgment, and on an annual basis thereafter, on or before each anniversary of the entry of this Final Judgment, a written statement as to the fact and manner of GS Caltex's compliance with Section V of this Final Judgment.

## VI.     RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any of the parties to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify or terminate any of its provisions, to enforce compliance, and to punish violations of its provisions.

## VII.     ENFORCEMENT OF FINAL JUDGMENT

A.     The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. GS Caltex agrees that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a preponderance of the evidence, and GS Caltex waives any argument that a different standard of proof should apply.

B.     The Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition the United States alleged was harmed by the challenged conduct. GS Caltex agrees that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light

of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.  In any enforcement proceeding in which the Court finds that GS Caltex has violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with such other relief as may be appropriate. In connection with any successful effort by the United States to enforce this Final Judgment against GS Caltex, whether litigated or resolved prior to litigation, GS Caltex agrees to reimburse the United States for the fees and expenses of its attorneys, as well as any other costs including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

## VIII.  EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire seven (7) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and GS Caltex that the continuation of the Final Judgment no longer is necessary or in the public interest.

## IX.  PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any

comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

DATED: March 14, 2019

_____

UNITED STATES DISTRICT JUDGE

# ATTACHMENT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the Civil Division of the United States Department of Justice and the United States Attorney's Office for the Southern District of Ohio, on behalf of the Defense Logistics Agency (DLA) and the Army and Air Force Exchange Service (AAFES) (collectively the "United States"), GS Caltex Corporation (GS Caltex), and Relator ▮▮▮▮▮▮▮ (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.     GS Caltex is a South Korea-based energy company that produces various petroleum products that it sells to South Korean and international customers, including the United States Department of Defense (DoD).

B.     On February 28, 2018, Relator, a resident and citizen of South Korea, filed a *qui tam* action in the United States District Court for the Southern District of Ohio captioned *United States ex rel.* ▮▮▮▮ *v. GS Caltex, et al.*, Civil Action No. ▮▮▮▮▮▮▮, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil FCA Action).  Relator contends that GS Caltex conspired with other South Korean entities to rig bids on DoD contracts to supply fuel to U.S. military bases throughout South Korea beginning in 2005 and continuing until 2016, including DLA Post, Camps, and Stations contracts and/or contract amendments ("PC&S contracts") executed in 2006, 2009, 2011, and 2013, and AAFES contracts executed in 2008.

C.     On such date as may be determined by the Court, GS Caltex will plead guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) (the "Plea Agreement") to an Information

to be filed in *United States v. GS Caltex Corporation*, Criminal Action No. [to be assigned] (S.D. Ohio) (the "Criminal Action") that will allege that GS Caltex participated in a combination and conspiracy beginning at least in or around March 2005 and continuing until at least in or around October 2016, to suppress and eliminate competition on certain contracts solicited by the DoD to supply ultra-low sulfur diesel and gasoline to numerous U.S. Army, Navy, Marine, and Air Force installations in Korea, known as PC&S contracts, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

D.     GS Caltex will execute a Stipulation with the Antitrust Division of the United States Department of Justice in which GS Caltex will consent to the entry of a Final Judgment to be filed in *United States v. GS Caltex Corporation*, Civil Action No. [to be assigned] (S.D. Ohio) (the Civil Antitrust Action) that will settle any and all civil antitrust claims of the United States against GS Caltex arising from any act or offense committed before the date of the Stipulation that was undertaken in furtherance of an attempted or completed antitrust conspiracy involving PC&S and/or AAFES fuel supply contracts with the U.S. military in South Korea during the period 2005 through 2016.

E.     The United States contends that it has certain civil claims against GS Caltex arising from a conspiracy with other South Korean entities to rig bids on DoD contracts to supply fuel to U.S. military bases throughout South Korea executed between 2005 and 2013, including DLA PC&S contracts and AAFES contracts, as well as the conduct described in the Plea Agreement in the Criminal Action. The conduct referenced in this Paragraph, as well as the conduct, actions, and claims alleged by Relator in the Civil FCA Action is referred to below as the Covered Conduct.

F.     With the exception of any admissions that are made by GS Caltex in connection with the Plea Agreement in the Criminal Action, this Settlement Agreement is neither an admission of liability by GS Caltex nor a concession by the United States or Relator that their claims are not well founded.

G.     Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.a.     GS Caltex shall pay to the United States $42,621,000 (FCA Settlement Amount), of which $28,414,474 is restitution.  Relator's right pursuant to 31 U.S.C. § 3730(d) to reasonable expenses, attorneys' fees and costs will be addressed separately by Relator, Relator's counsel and GS Caltex.

1.b.     Interest at an annual rate of three (3) percent shall accrue on the FCA Settlement Amount beginning on the Effective Date of this Agreement and continuing until the date that both of the following events have occurred: (i) the Plea Agreement is accepted by the Court in the Criminal Action; and (ii) the proposed Final Judgment is entered by the Court in the Civil Antitrust Action (Accrued Interest).

1.c.     The total FCA payment due from GS Caltex shall be the FCA Settlement Amount plus any Accrued Interest (Total FCA Settlement Amount).  GS Caltex shall pay the Total FCA Settlement Amount by electronic funds transfer no later than seven (7)

business days after both events identified above in Paragraph 1.b. have occurred (Payment Due Date). The Civil Division of the United States Department of Justice shall provide to counsel for GS Caltex written payment instructions and confirmation of the Total FCA Settlement Amount no later than five (5) business days before the Payment Due Date. If GS Caltex does not pay the Total FCA Settlement Amount on or before the Payment Due Date, interest at an annual rate of nine (9) percent shall accrue on the Total FCA Settlement Amount beginning on the first calendar day after the Payment Due Date and shall continue to accrue until paid.

     1.d.    If GS Caltex's Plea Agreement in the Criminal Action is not accepted by the Court or the Court does not enter the Final Judgment in the Civil Antitrust Action, this Agreement shall be null and void at the option of either the United States or GS Caltex. If either the United States or GS Caltex exercises this option, which option shall be exercised by notifying all Parties, through counsel, in writing within five (5) business days of the Court's decision, the Parties will not object and this Agreement will be rescinded. If this Agreement is rescinded, GS Caltex will not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims, actions or proceedings arising from the Covered Conduct that are brought by the United States within ninety (90) calendar days of rescission, except to the extent such defenses were available on the day on which Relator's *qui tam* complaint in the Civil FCA Action was filed.

     2.    Subject to the exceptions in Paragraph 3 (concerning excluded claims) below, and conditioned upon GS Caltex's full payment of the Total FCA Settlement Amount, the United States releases GS Caltex together with its current and former parent

corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; Contract Disputes Act, 41 U.S.C. §§ 7101-7109; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud, or under any statute creating causes of action for civil damages or civil penalties which the Civil Division of the United States Department of Justice has authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I, § 0.45(d).

3. Notwithstanding the release given in paragraph 2 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. Any criminal liability, except to the extent detailed in the Plea Agreement;

c. Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon obligations created by this Agreement;

f.   Any liability of individuals;

g.   Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.   Any liability for failure to deliver goods or services due; and

i.   Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

4.   Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  The determination of Relator's share, if any, of the FCA Settlement Amount pursuant to 31 U.S.C. §3730(d) is a matter that shall be handled separately by and between the Relator and the United States, without any direct involvement or input from GS Caltex.  In connection with this Agreement and this Civil FCA Action, Relator, on behalf of himself and his heirs, successors, attorneys, agents, and assigns agrees that neither this Agreement, nor any intervention by the United States in the Civil FCA Action in order to dismiss the Civil FCA Action, nor any dismissal of the Civil FCA Action, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. § 3730(d)(3), bar Relator from sharing in the proceeds of this Agreement, except that the United States will not contend that Relator is barred from sharing in the proceeds of this Agreement pursuant to 31 U.S.C. § 3730(e)(4). Moreover, the United States and Relator, on behalf of himself and his heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the

False Claims Act on the issue of the share percentage, if any, that Relator should receive of any proceeds of the settlement of his claims, and that no agreements concerning Relator share have been reached to date.

5.      Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases GS Caltex, together with its predecessors, successors, assigns, shareholders, subsidiaries, businesses, affiliates, divisions, sister companies, owners, directors, officers, agents, employees, and counsel, from any action, in law or in equity, suits, debts, liens, contracts, agreements, covenants, promises, liability, obligations, claims, demands, rights of subrogation, contribution and indemnity, damages, loss, cost or expenses, direct or indirect, of any kind or nature whatsoever (including without limitation any civil monetary claim Relator has on behalf of the United States for the Covered Conduct under the False Claims Act. 31 U.S.C. §§ 3729-3733), known or unknown, fixed or contingent, foreign (including Korean), state or federal, under common law, statute or regulation, liquidated or unliquidated, claimed or concealed, and without regard to the date of occurrence, which Relator ever had, now has, may assert, or may in the future claim to have, against GS Caltex by reason of any act, cause, matter, or thing whatsoever from the beginning of time to the date hereof.  Relator represents and warrants that he and his counsel are the exclusive owner of the rights, claims, and causes of action herein released and none of them have previously assigned, reassigned, or transferred or purported to assign, reassign or transfer, through bankruptcy or by any other means, any or any portion of any claim, demand, action, cause of action, or other right released or discharged under this Agreement except between themselves and their counsel.  Notwithstanding the foregoing, or any other terms of this Agreement, this

Agreement does not resolve or release Relator's right pursuant to 31 U.S.C. § 3730(d) to reasonable expenses necessarily incurred, plus reasonable attorneys' fees and costs relating to the Covered Conduct, the amount of which will be addressed separately by Relator, Relator's counsel, and GS Caltex.

6.     GS Caltex waives and shall not assert any defenses GS Caltex may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

7.     GS Caltex fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that GS Caltex has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

8.     GS Caltex, for itself and on behalf of its predecessors, successors, assigns, shareholders, subsidiaries, businesses, affiliates, divisions, sister companies, owners, directors, officers, agents, employees, and counsel, releases Relator, together with his heirs, successors, attorneys, agents, and assigns from any action, in law or in equity, suits, debts, liens, contracts, agreements, covenants, promises, liability, obligations, claims, demands, rights of subrogation, contribution and indemnity, damages, loss, cost or expenses, direct or indirect, of any kind or nature whatsoever, known or unknown, fixed

or contingent, foreign (including Korean), state or federal, under common law, statute or regulation, liquidated or unliquidated, claimed or concealed, and without regard to the date of occurrence, which GS Caltex ever had, now has, may assert, or may in the future claim to have, against Relator by reason of any act, cause, matter, or thing whatsoever from the beginning of time to the date hereof. GS Caltex represents and warrants that it and its counsel are the exclusive owner of the rights, claims, and causes of action herein released and none of them have previously assigned, reassigned, or transferred or purported to assign, reassign or transfer, through bankruptcy or by any other means, any or any portion of any claim, demand, action, cause of action, or other right released or discharged under this Agreement except between themselves and their counsel. Notwithstanding the foregoing, or any other terms of this Agreement, this Agreement does not resolve or release GS Caltex's right pursuant to 31 U.S.C. § 3730(d) to assert defenses to Relator's claimed attorneys' fees, expenses, and costs relating to the Covered Conduct, the amount of which will be addressed separately by Relator, Relator's counsel, and GS Caltex.

9.    a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of GS Caltex, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement, any related plea agreement, and any related civil antitrust agreement;

(2)    the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)     GS Caltex's investigation, defense, and corrective actions

undertaken in response to the United States' audit(s) and

civil and any criminal investigation(s) in connection with

the matters covered by this Agreement (including

attorney's fees);

(4)     the negotiation and performance of this Agreement, any

related plea agreement, and any related civil antitrust

agreement;

(5)     the payment GS Caltex makes to the United States pursuant

to this Agreement and any payments that GS Caltex may

make to Relator, including costs and attorneys' fees, are

unallowable costs for government contracting purposes

(hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs:  Unallowable Costs will

be separately determined and accounted for by GS Caltex, and GS Caltex shall not charge

such Unallowable Costs directly or indirectly to any contract with the United States.

c.     Treatment of Unallowable Costs Previously Submitted for

Payment: Within 90 days of the Effective Date of this Agreement, GS Caltex shall

identify and repay by adjustment to future claims for payment or otherwise any

Unallowable Costs included in payments previously sought by GS Caltex or any of its

subsidiaries or affiliates from the United States.  GS Caltex agrees that the United States,

at a minimum, shall be entitled to recoup from GS Caltex any overpayment plus

applicable interest and penalties as a result of the inclusion of such Unallowable Costs on

previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine GS Caltex's books and records and to disagree with any calculations submitted by GS Caltex or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by GS Caltex, or the effect of any such Unallowable Costs on the amount of such payments.

10.     GS Caltex agrees to cooperate fully and truthfully with the United States in connection with the Civil FCA Action. The Civil Division of the United States Department of Justice will use reasonable best efforts, where appropriate, to coordinate any requests for cooperation in connection with the Civil FCA Action with requests for cooperation in connection with the Plea Agreement in the Criminal Action and the Civil Antitrust Action, so as to avoid unnecessary duplication and expense. GS Caltex's ongoing, full, and truthful cooperation shall include, but not be limited to:

a.     upon request by the United States with reasonable notice, producing at the offices of counsel for the United States in Washington, D.C. and not at the expense of the United States, complete and un-redacted copies of all non-privileged documents related to the Covered Conduct wherever located in GS Caltex's possession, custody, or control;

b.     upon request by the United States with reasonable notice, making current GS Caltex directors, officers, and employees available for interviews, consistent with the rights and privileges of such individuals, by counsel for the United States and/or their investigative agents, not at the expense of the United States, in the United States or Hong Kong unless another place is mutually agreed upon;

c.     upon request by the United States with reasonable notice, (i) using best efforts to assist in locating former GS Caltex directors, officers, and employees identified by attorneys and/or investigative agents of the United States, and (ii) using best efforts to make any such former GS Caltex directors, officers, and employees available for interviews, consistent with the rights and privileges of such individuals, by counsel for the United States and/or their investigative agents, not at the expense of the United States, in the United States or Hong Kong unless another place is mutually agreed upon; and

d.     upon request by the United States with reasonable notice, making current GS Caltex directors, officers, and employees available, and using best efforts to make former GS Caltex directors, officers, employees available, to testify, consistent with the rights and privileges of such individuals, fully, truthfully, and under oath, without falsely implicating any person or withholding any information, (i) at depositions in the United States, Hong Kong, or any other mutually agreed upon place, (ii) at trial in the United States, and (iii) at any other judicial proceedings wherever located related to the Civil FCA Action.

11.     This Agreement is intended to be for the benefit of the Parties only.

12.     Upon receipt of the payment of the Total FCA Settlement Amount described in Paragraph 1.a-c., above, or receipt of the Total FCA Settlement Amount and any additional interest that accrues if GS Caltex does not pay on or before the Payment Due Date, the United States and Relator shall promptly sign and file a Joint Stipulation of Dismissal, with prejudice, of the claims filed against GS Caltex in the Civil FCA Action, pursuant to Rule 41(a)(1), which dismissal shall be conditioned on the Court retaining

jurisdiction over Relator's claims to a relator's share and recovery of attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d).

13.     Except as provided herein, each Party shall bear its own legal and other costs incurred in connection with this matter. The Parties agree that Relator and GS Caltex will not seek to recover from the United States any costs or fees related to the preparation and performance of this Agreement.

14.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

15.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Ohio. GS Caltex agrees that the United States District Court for the Southern District of Ohio has jurisdiction over it for purposes of the Civil FCA Action. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

16.     This Agreement constitutes the complete agreement between the Parties on the subject matters addressed herein. This Agreement may not be amended except by written consent of the Parties.

17.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

18.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

19.     This Agreement is binding on GS Caltex's successors, transferees, heirs, and assigns.

20.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

21.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public, as permitted by order of the Court. This Agreement shall not be released in un-redacted form until the Court unseals the entire Civil FCA Action.

22.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Electronic copies of signatures shall constitute acceptable, binding signatures for purposes of this Agreement

THE UNITED STATES OF AMERICA

DATED: 11/14/18    BY: _____

Andrew A. Steinberg
Trial Attorney
Commercial Litigation Branch
Civil Division, U.S. Department of Justice

DATED: 11/13/18    BY: _____

Mark T. D'Alessandro
Civil Chief
Andrew Malek
Assistant United States Attorney
U.S. Attorney's Office for the
Southern District of Ohio

GS CALTEX CORPORATION - DEFENDANT

DATED: Nov. 13, 2018  BY: _____
                           Authorized Representative
                           of GS Caltex Corporation

DATED: Nov. 15, 2018  BY: _____
                           Marguerite M. Sullivan
                           Latham & Watkins LLP

                           Scott D. Hammond
                           Gibson, Dunn & Crutcher LLP

                           Counsel for GS Caltex Corporation

█████████ RELATOR

DATED: _____ BY: _____████████_____

DATED: _____ BY: _____
                           Eric Havian
                           Constantine Cannon LLP
                           Counsel for Relator

GS CALTEX CORPORATION - DEFENDANT

DATED: _____ BY: _____
Authorized Representative
of GS Caltex Corporation

DATED: _____ BY: _____
Marguerite M. Sullivan
Latham & Watkins LLP

Scott D. Hammond
Gibson, Dunn & Crutcher LLP

Counsel for GS Caltex Corporation

███████████ RELATOR

DATED: *Nov 14th* BY: ███████████████████████
*2018*

DATED: 11/14/18 BY: _____
Eric Havian
Constantine Cannon LLP
Counsel for Relator